IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RICHARD J. PATZ, | § | |
| TDCJ #11007700, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-0602 |
| | § | |
| DOUG DRETKE, Director, | § | |
| Texas Department of Criminal Justice - | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

State inmate Richard J. Patz has filed a federal habeas corpus petition under 28 U.S.C. § 2254, challenging a state court felony conviction. The respondent has answered with a motion for summary judgment, arguing that Patz is not entitled to federal habeas corpus relief. (Docket Entry No. 12). Patz has not filed a response to the motion, and his time to do so has expired. After considering all of the pleadings, the state court records, and the applicable law, the Court grants the respondent's motion, denies habeas corpus relief, and dismisses this case for reasons set forth below.

## I.   BACKGROUND

A grand jury in Harris County, Texas, returned an indictment against Patz in cause number 898370, charging him with capital murder by intentionally causing the death of James Leo Roberts during the course of committing or attempting to commit a robbery. At trial a co-defendant named Betsy Helm testified that Patz killed Roberts by bludgeoning him repeatedly in the head with a tool or hammer-like instrument, and that Patz then took certain

items of Roberts' property, including a television set.  Patz and Helm left the scene in a vehicle that belonged to Roberts.  Patz was later arrested while driving that vehicle.  Patz's fingerprints were found in a latex glove adjacent to Roberts' body.  After hearing all of the evidence, a jury in the 208th District Court of Harris County, Texas, found Patz guilty as charged of capital murder.  Because the State did not seek the death penalty, the trial court automatically sentenced Patz to a term of life imprisonment.

On direct appeal, Patz challenged his conviction on the sole ground that Helm's testimony as an accomplice witness was not sufficiently corroborated with evidence connecting him to the offense.  The state intermediate appellate court rejected that claim and affirmed the conviction in an unpublished opinion.  *See Patz v. State*, No. 14-02-00550-CR (Tex. App. — Houston [14th Dist.] July 31, 2003).  Patz did not appeal further by filing a petition for discretionary review with the Texas Court of Criminal Appeals.

Patz filed a state habeas corpus application under Article 11.07 of the Texas Code of Criminal Procedure to challenge his conviction further.  Patz argued that there was insufficient evidence to support his conviction because the State failed to prove that the murder was committed during the course of committing or attempting to commit a robbery. Patz also complained that the trial court committed error by failing to give a jury instruction on the lesser-included offense of murder.  Patz alleged further that his trial was unfair because his attorney committed the following errors: (1) he failed to object to the jury instruction on capital murder or request an instruction for the lesser-included offense of murder; (2) he failed to obtain a ruling on a motion to disclose and to exclude reference to

extraneous offenses; and (3) he failed to object to the admission of extraneous offenses by Patz. In addition, Patz argued that the prosecutor committed misconduct during closing arguments and that he was denied effective assistance of counsel on appeal because his appellate attorney failed to raise this issue.

The state habeas corpus court, which also presided over Patz's trial, requested an affidavit from Patz's trial attorney. After considering this affidavit along with the trial record, the state habeas corpus court entered findings of fact and conclusions of law recommending that habeas corpus relief be denied. *See Ex parte Patz*, No. 898370-A (Nov. 22, 2004). The Texas Court of Criminal Appeals agreed and denied relief, without a written order, based on the findings and conclusions made by the trial court. *See Ex parte Patz*, No. 60,982-01 (Feb. 9, 2005).

In his federal habeas corpus petition, Patz raises the same claims and arguments that he presented in his state court habeas corpus application. (Docket Entry No. 1). The respondent has filed a motion for summary judgment, arguing that federal habeas corpus relief is not warranted. (Docket Entry No. 12). The parties' contentions are discussed below under the governing standards of review.

## II.   STANDARDS OF REVIEW

### A.   Summary Judgment

The respondent's motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. In deciding a motion for summary judgment under Rule 56, a court must determine whether "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). A movant's burden is to point out the absence of evidence supporting the nonmovant's case. *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citing *Celotex*, 477 U.S. at 323; *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996)). To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action. *Id.* (citing *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 349 (5th Cir. 2001)).

An issue is material if its resolution could affect the outcome of the action. *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). In deciding whether a fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Hotard v. State Farm Fire & Cas. Co.,* 286 F.3d 814, 817 (5th Cir. 2002). However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy – that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999).

The petitioner proceeds *pro se* in this case. Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *See Haines v.*

4

*Kerner*, 404 U.S. 519 (1972); *see also Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999) ("[I]n this circuit *pro se* habeas petitions are construed liberally and are not held to the same stringent and rigorous standards as are pleadings filed by lawyers."). Pleadings filed by a *pro se* litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them. *See Haines*, 404 U.S. at 521; *see also United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997) (citing *Nerren v. Livingston Police Dept.*, 84 F.3d 469, 473 & n.16 (5th Cir. 1996)). Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *See Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

As noted above, the petitioner has not filed a response to the motion for summary judgment. According to this Court's local rules, responses to motions are due within twenty days, S.D. TEX. R. 7.3, unless the time is extended. Any failure to respond is taken as a representation of no opposition. S.D. TEX. R. 7.4. The Court specifically directed the petitioner to respond within thirty days to any dispositive motion filed by the respondent or face dismissal for want of prosecution. (Docket Entry No. 2, ¶ 6). Notwithstanding the petitioner's failure to respond, summary judgment may not be awarded by default. *See Hibernia Nat'l Bank v. Administration Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985). "A motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995) (citing *Hibernia Nat'l Bank*, 776 F.2d at 1279). In that

5

regard, the movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the reviewing court may not grant the motion regardless of whether any response was filed.  *See Hetzel*, 50 F.3d at 362 n.3.  Nevertheless, in determining whether summary judgment is warranted, the district court may accept as undisputed the facts set forth in the unopposed motion.  *See Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).

### B.   Habeas Corpus Review

The federal writ of habeas corpus is an extraordinary remedy, which shall not extend to any prisoner unless he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §§ 2241(c)(3), 2254(a); *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993) (explaining that "the writ of habeas corpus has historically been regarded as an extraordinary remedy, a bulwark against convictions that violate fundamental fairness"). The pending federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding that the AEDPA applies to those habeas corpus petitions filed after its effective date of April 24, 1996).  Embodying the principles of federalism, comity, and finality of judgments, the AEDPA, codified as amended at 28 U.S.C. § 2254(d), "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000), *cert. denied*, 532 U.S. 1067 (2001).  Specifically, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to

ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

To the extent that the petitioner presented his claims properly on state habeas corpus review, the Texas Court of Criminal Appeals denied relief without a written order.  As a matter of law, a denial of relief by the Court of Criminal Appeals serves as an adjudication on the merits of the claim.  *See Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir.) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)), *cert. denied*, 531 U.S. 849 (2000); *see also Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999) (noting that, under Texas law, a denial of relief rather than a dismissal of the claim by the Court of Criminal Appeals disposes of the merits of a claim).  Accordingly, the federal habeas corpus standard of review, as amended by the AEDPA, applies to the petitioner's claims as long as they were adjudicated on the merits and not dismissed for procedural reasons.[1]  *See Haley v. Cockrell*, 306 F.3d 257, 263 (5th Cir. 2002) (citing *Valdez v. Cockrell*, 274 F.3d 941, 946-48 (5th Cir. 2001)); *see also Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999) (concluding that when a state habeas corpus court rejects a petitioner's claim on procedural grounds, there has not been an "adjudication on the merits" as contemplated by the AEDPA).

---

[1]     Additionally, pre-AEDPA precedent forecloses habeas corpus relief if any of the following circumstances are present: (1) the claim is barred as a consequence of the petitioner's failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); (2) the claim seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989); or (3) the claim asserts trial error that, although of constitutional magnitude, did not have a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

7

The provisions of 28 U.S.C. § 2254(d), as amended by the AEDPA, set forth a "highly deferential standard for evaluating state-court rulings, . . . , which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted). For claims adjudicated on the merits, the AEDPA's amendments provide that a petitioner is not entitled to relief unless the state court's adjudication:

1.    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Courts are to review pure questions of law and mixed questions of law and fact under § 2254(d)(1). *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 534 U.S. 885 (2001). Under the first ("contrary to") clause, a federal district court may grant habeas relief if the state court decided a case differently from how the United States Supreme Court decided a case on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the second ("unreasonable application") clause, a court may grant habeas relief if the state court correctly divined a legal principle from the Supreme Court's jurisprudence but misapplied that principle to the facts. *See id*.

Section 2254(d)(2) governs pure questions of fact. *See Moore v. Johnson*, 225 F.3d 495, 501, 504 (5th Cir. 2000). Under this subsection, federal courts must give deference to state court findings of fact unless they are based on an unreasonable interpretation of the evidence presented in the state court proceeding. *See Brewer v. Dretke*, 410 F.3d 773, 775 (5th Cir. 2005) (citing *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000) (as modified

on denial of rehearing)).  In addition, any factual findings made by the state court in deciding a petitioner's claims are presumed correct under 28 U.S.C. § 2254(e)(1), unless the petitioner rebuts those findings with "clear and convincing evidence to the contrary."  *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002).

This Court's inquiry under the AEDPA is not altered where the state court denies relief without a written opinion.  *See Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003).  For such a situation, a reviewing court (1) assumes that the state court applied the proper "clearly established Federal law"; and (2) then determines whether its decision was "contrary to" or was "an objectively unreasonable application of" that law.  *Id.* (citing *Catalan v. Cockrell*, 315 F.3d 491, 493 & n.3 (5th Cir. 2002)).  A federal habeas corpus court's review is therefore restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning."  *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (citing *Cruz v. Miller*, 255 F.3d 77, 86 (2d Cir. 2001) (noting that even where a state court makes a mistake in its analysis, "we are determining the reasonableness of the state court's 'decision,' . . . not grading their papers.")), *cert. denied*, 535 U.S. 982 (2002).

## III.   DISCUSSION

### A.   Sufficiency of the Evidence

Patz contends that there was insufficient evidence to support his conviction for capital murder because the State failed to prove that the murder was committed during the course of committing or attempting to commit a robbery.  Noting that Patz did not challenge the sufficiency of the evidence on appeal, the state habeas corpus court rejected this claim

because such challenges are not cognizable on post-conviction review.  *See Ex parte Patz,* No. 60,982-01 at 72 (citing *Ex parte Christian*, 760 S.W.2d 659, 660 (Tex. Crim. App. 1988)).  Because the last state court to consider his challenge to the sufficiency of the evidence rejected it for procedural reasons, the respondent maintains that Patz's claim is barred from federal habeas corpus review by the doctrine of procedural default.

### 1.    Procedural Default

In this case, the state habeas corpus court refused to address Patz's challenge to the sufficiency of the evidence because he failed to raise it on direct appeal in compliance with Texas law.  It has long been the law in Texas that a challenge to the sufficiency of the evidence is not cognizable in a post-conviction habeas corpus proceeding.  *See Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004); *Ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1988); *Ex parte Christian*, 760 S.W.2d 659, 660 (Tex. Crim. App. 1988); *Ex parte Williams*, 703 S.W.2d 674, 677 (Tex. Crim. App. 1986); *Ex parte Easter*, 615 S.W.2d 719, 721 (Tex. Crim. App.), *cert. denied*, 454 U.S. 943 (1981).  Patz's failure to raise his claim in a procedurally proper manner deprived the state court of the opportunity to review the claim, resulting in a procedural default.  *See Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir. 1998); *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995).  The Fifth Circuit has recognized that where, as here, a habeas petitioner has failed to challenge the sufficiency of the evidence on direct appeal the claim is barred by the doctrine of procedural default.  *See West v. Johnson*, 92 F.3d 1385, 1398 n.18 (5th Cir. 1996), *cert. denied*, 520 U.S. 1242 (1997); *Renz v. Scott*, 28 F.3d 431, 432 (5th Cir. 1994).

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "This doctrine ensures that federal courts give proper respect to state procedural rules." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *see also Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (explaining that the cause and prejudice standard is "grounded in concerns of comity and federalism"); *Coleman*, 501 U.S. at 750 (recognizing "the important interest in finality served by state procedural rules, and the significant harm to the States that results from the failure of federal courts to respect them").

Patz does not dispute that the state habeas corpus court rested its rejection of his claim on a regularly followed state procedural rule. Likewise, Patz does not argue that he is actually innocent or that the fundamental miscarriage of justice exception somehow applies in this case.[2] Therefore, this claim is procedurally barred unless Patz can demonstrate both

---

[2]    The fundamental-miscarriage-of-justice exception to the doctrine of procedural default is limited to cases where the petitioner can make a persuasive showing that he is actually innocent of the charges against him. *See Coleman*, 501 U.S. at 750; *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir.), *cert. denied*, 514 U.S. 1123 (1995). To make this showing the petitioner must prove that, as a factual matter, he did not commit the crime for which he was convicted. *See Smith v. Johnson*, 216 F.3d 521, 524 (5th Cir. 2000) (citing *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999)). "To establish the requisite probability that he was actually innocent, the petitioner must support his allegations with new, reliable evidence that was not presented at trial and show that it was 'more likely than not that no reasonable juror would (continued...)

cause and actual prejudice for the default.

The Supreme Court has explained that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "Examples of external impediments include active government interference or the reasonable unavailability of the factual or legal basis for the claim." *Rodriguez v. Johnson*, 104 F.3d 694, 697 (5th Cir.), *cert. denied*, 520 U.S. 1267 (1997). Actual prejudice requires a showing that, based on the success of the underlying defaulted claim, the result of the proceeding would somehow have been different. *See Barrientes v. Johnson*, 221 F.3d 741, 769 (5th Cir. 2000), *cert. dism'd*, 531 U.S. 1134 (2001) (citing *Strickler v. Green*, 527 U.S. 263, 119 S. Ct. 1936, 1952 (1999)).

Patz makes no effort to show cause for his failure to raise his challenge to the sufficiency of the evidence in a procedurally proper manner on direct appeal.[3] Moreover, Patz fails to demonstrate actual prejudice in connection with this issue because, for reasons

_____

[2] (...continued)
have convicted him in the light of the new evidence.'" *Finley v. Johnson*, 243 F.3d 215, 221 (5th Cir. 2000) (quoting *Fairman*, 188 F.3d at 644) (quoting *Schlup v. Delo*, 513 U.S. 298 (1995)).

[3] Patz's petition includes an argument that he received ineffective assistance of counsel on appeal, which may constitute cause in some cases. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). However, that claim concerns only his appellate attorney's failure to complain about prosecutorial misconduct. Patz does not fault his attorney for failing to challenge the sufficiency of the evidence. Moreover, as discussed more fully below, Patz fails to establish a valid claim for ineffective assistance of counsel in this case.

discussed below, he does not establish a valid claim.  Absent a showing of cause and actual prejudice, this claim is barred by the doctrine of procedural default.  Therefore, the respondent is entitled to summary judgment on this issue.

### 2.    Patz's Claim is Without Merit

Alternatively, the respondent argues that any challenge by Patz to the sufficiency of the evidence is without merit.  The Fifth Circuit has made clear that, for purposes of federal habeas corpus review, a state conviction need only satisfy the legal sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979).  *See Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir.), *cert. denied*, 498 U.S. 903 (1990); *accord West v. Johnson*, 92 F.3d 1385, 1394 (5th Cir. 1996), *cert denied*, 520 U.S. 1242 (1997). Under the well-settled *Jackson* standard, the governing inquiry in a legal-sufficiency analysis requires only that a federal habeas corpus court determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Wright v. West*, 505 U.S. 277, 284 (1992) (applying the *Jackson* standard).   In making determinations about the sufficiency of the evidence, the reviewing court may not substitute its view of the evidence for that of the fact finder, but must consider all of the evidence in the light most favorable to the prosecution.  *See Weeks v. Scott*, 55 F.3d 1059, 1061 (5th Cir. 1995).  Habeas corpus relief is appropriate only where the evidence is such that no rational trier of fact could have found that the essential elements of the crime were present beyond a reasonable doubt.  *See Marler v. Blackburn*, 777 F.2d 1007, 1011 (5th Cir. 1985).  Whether the commission of a crime is adequately supported by

13

the record requires reference to the substantive elements of the criminal offense as defined by state law. *See Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985); *Turner v. McKaskle*, 721 F.2d 999, 1001 (5th Cir. 1983).

The indictment in this case accused Patz of capital murder by intentionally causing the death of James Leo Roberts during the course of committing or attempting to commit a robbery. In the State of Texas, a person commits capital murder if he intentionally causes the death of an individual in the course of committing or attempting to commit robbery. TEX. PEN. CODE ANN. §§ 19.02(b)(1), 19.03(a)(2). A person commits robbery if he unlawfully appropriates property with the intent to deprive the owner of the property and, with the intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another, or intentionally or knowingly places another in fear of imminent bodily injury or death. *Id*. §§ 29.02(a), 31.03(a).

The State presented testimony at trial from Patz's co-defendant, Betsy Helm, who had previously pleaded guilty without an agreed recommendation as to punishment to charges of aggravated robbery for her role in the offense. (Court Reporter's Record, vol. VII, at 50). Helm testified that Patz and she had been living at a residence owned by the victim, James Leo Roberts. (*See id*. at 56-57). The couple did not pay rent; instead, Patz performed odd jobs, ran errands, and did other work for Roberts. (*See id*. at 60-64). On Thanksgiving Day, 1999, Roberts reportedly confronted Patz in an "agitated" manner. (*Id*. at 66). Helm explained that Patz's "job situation" with Roberts was not working out and that the couple would have to move out of the residence. (*See id*. at 67-68). Helm indicated that the couple

14

argued because they lacked resources and that were having "a lot of problems" with drugs at the time. (*See id.* at 68). According to Helm, Patz formed a plan to "take out" or "kill" Roberts. (*Id.* at 69).

Helm testified that the two approached Roberts at his residence (a remodeled warehouse). (*See id.* at 77-78, 82). Helm saw Patz hitting Roberts in the head with a "hammer or something" about ten or fifteen times. (*Id.* at 82-84). At first, Helm was unsure whether Roberts was dead, but she believed that Roberts was badly hurt because there was so much blood. (*See id.* at 86-87). When Roberts' body flinched at one point, Helm stated that Patz hit him five more times. (*See id.* at 88). The two donned latex gloves and attempted to clean up the bloody scene. (*See id.* at 88-93). Patz then took a television set, along with some other unspecified items, and left in a truck belonging to Roberts. (*See id.* at 96). Patz was later arrested driving Roberts' truck. (Court Reporter's Record, vol. 6, at 94-95).

Patz alleges that the robbery occurred as an afterthought. Patz argues therefore that the evidence was insufficient to support his conviction for capital murder because the State did not prove he committed murder while *in the course of* committing or attempting to commit robbery. The Court disagrees. Patz does not dispute that he murdered Roberts, and there was more than sufficient evidence to show that Patz appropriated property belonging to Roberts after the murder occurred. In Texas, the "evidence is sufficient to prove murder 'in the course of' committing robbery in a capital murder case if the State proves that the robbery occurred immediately after the murder." *Cooper v. State*, 67 S.W.3d 221, 223 (Tex.

Crim. App. 2002); *accord McGee v. State*, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989)

("We have held numerous times that this aggravating element is sufficiently proven if the

State proves the robbery occurred immediately after the commission of the murder."), *cert.*

*denied*, 494 U.S. 1060 (1990).  From the evidence presented, the jury could reasonably have

inferred that Patz's motive was to kill Roberts to obtain control of his property to use or to

sell.  After considering the entire trial court record in light of the applicable standard, the

Court concludes that the evidence was legally sufficient because a rational trier of fact could

have found the essential elements of the offense charged beyond a reasonable doubt.  *See,*

*e.g., Jackson*, 443 U.S. at 320.  Because Patz has not demonstrated that the evidence was

legally insufficient, he is not entitled to federal habeas corpus relief on this claim.

**B.  Jury Instruction on a Lesser-Included Offense**

Patz argues that the trial court committed error by failing to include in the jury charge

an instruction on the lesser-included offense of murder.  The state habeas corpus court found

that this claim was procedurally barred from collateral review because he failed to raise the

claim on direct appeal.  *See Ex parte Patz,* No. 60,982-01 at 72 (citing *Ex parte Coleman*,

599 S.W.2d 305 (Tex. Crim. App. 1978); *Ex parte Gomez*, 389 S.W.2d 308 (Tex. Crim. App.

1965); *Ex parte Gardner*, 959 S.W.2d 189, 198-200 (Tex. Crim. App. 1998)).  Because the

last state court to consider this claim rejected it on procedural grounds, the respondent argues

that Patz has committed a procedural default that bars federal habeas corpus review.

**1.  Procedural Default**

Patz does not dispute that the state habeas corpus court rested its rejection of his claim

16

on regularly followed state procedural grounds.   As outlined above, Patz has not

demonstrated cause for his procedural default.   Likewise, for reasons addressed briefly

below, Patz does not demonstrate actual prejudice because his claim is without merit.

Therefore, this claim is procedurally barred from federal habeas corpus review.

### 2.    Patz's Claim is Without Merit

In support of his contention that he was entitled to a jury instruction on the lesser-

included offense of murder, Patz relies on the Supreme Court's decision in *Beck v. Alabama*,

447 U.S. 625 (1980).   In *Beck*, the Supreme Court held that a sentence of death could not be

imposed in a capital case where the jury was not permitted to consider a verdict of guilt of

a lesser-included noncapital offense and the evidence would have supported such a verdict.

As the Fifth Circuit has explained, under the rule in *Beck*, a state trial court may not "refuse

a lesser-included-offense instruction 'if the jury could rationally acquit on the capital crime

and convict for the noncapital crime.'" *East v. Scott*, 55 F.3d 996, 1005 (5th Cir. 1995)

(citations omitted).

Because there was more than sufficient evidence adduced to support a conviction for

capital murder, Patz does not show that a jury could rationally acquit him of that offense in

favor of a noncapital crime.   More importantly, Patz fails to show that the rule in *Beck*

applies to his case for another reason.   Although Patz was charged with a capital offense, the

State did not elect to seek the death penalty.   The rule in *Beck* does not apply where, as here,

a sentence of death was not imposed.   *See Creel v. Johnson*, 162 F.3d 385, 390-91 (5th Cir.

1998) (holding that "a case in which the death penalty is sought but not imposed ultimately

is classified as a noncapital case for the purposes of a *Beck* analysis"), *cert. denied*, 526 U.S. 1148 (1999).  Because Patz's conviction is treated as a noncapital case, any "failure to give an instruction on a lesser-included offense does not raise a federal constitutional issue." *Creel*, 162 F.3d at 390; *see also Valles v. Lynaugh*, 835 F.2d 126, 127 (5th Cir. 1988); *Alexander v. McCotter*, 775 F.2d 595, 601 (5th Cir. 1985).  Absent a claim of constitutional proportion, Patz cannot show that he is entitled to habeas corpus relief on this issue as a matter of law.

### C.    Prosecutorial Misconduct

Patz claims that the prosecutor committed misconduct by making improper comments during closing arguments.  The state habeas corpus court found that this claim was procedurally barred from habeas review because Patz did not raise this issue on direct appeal. *See Ex parte Patz,* No. 60,982-01 at 72 (citing *Ex parte Townsend*, 137 S.W.3d 79, 81 (Tex. Crim. App. 2004)).  Noting that the state habeas corpus court rejected this claim for procedural reasons, the respondent maintains that Patz's prosecutorial-misconduct claim is barred from federal habeas corpus review by the doctrine of procedural default.

### 1.    Procedural Default

Patz does not dispute that the state habeas corpus court rested its rejection of his claim on a regularly followed state procedural rule.  Patz has not demonstrated cause for his procedural default.[4]  Alternatively, as outlined below, Patz fails to establish a valid claim of

---

[4]     Patz has made an ineffective-assistance claim against his appellate attorney concerning his failure to raise the issue of prosecutorial misconduct on direct appeal. Deficient performance

(continued...)

18

prosecutorial misconduct.  Therefore, he does not demonstrate actual prejudice. It follows that this claim is procedurally barred from federal habeas corpus review.

### 2.      Patz's Claim is Without Merit

Patz complains that the prosecutor committed misconduct during closing arguments by improperly bolstering or vouching for the State's main witness and by misstating the evidence. Patz contends further that the prosecutor engaged in misconduct during summation by commenting on his failure to testify.   The disputed comments are addressed separately below.

### a.      Bolstering

Patz objects that the prosecutor erred by attempting to bolster the credibility of his co-defendant, Betsy Helm, who had offered the most damaging testimony against him.  Patz takes issue with the following instance in which the prosecutor commented during closing argument about alleged discrepancies between Helm's testimony and a statement given by Helm to the police following her arrest:

> Let's talk about the statement, what you have and why you can look at what Betsy told you and say, you know what, in any other context I wouldn't believe one word that girl says.

---

[4](...continued)
by counsel may, in some circumstances, constitute cause for a procedural default.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  "Not just any deficiency will do, however; the assistance must have been so ineffective as to violate the Federal Constitution." *Id.*  "In other words, ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim." *Id.* (emphasis in original).  For reasons set forth below, Patz fails to establish a valid claim for ineffective assistance of counsel.  Therefore, this allegation does not constitute cause for purposes of overcoming the doctrine of procedural default.

> But you could honestly look at what this case offers, and what she talked about in this case and say, you know what, in the context regarding this murder, I can believe what she said.
>
> And the reason I can believe is because the State brought witness after witness, after witness, after witness who talked about pieces of evidence, one after the other, that corroborated what she said.

(Court Reporter's Record, vol. 10, at 49-50).  In Patz's view, the prosecutor committed misconduct by vouching for Helm's credibility.

As a general rule, the prosecutor may not bolster the credibility of government witnesses during closing argument by personally attesting to their truthfulness, as "doing so may imply that the prosecutor has additional personal knowledge about the witness and facts that confirm such witness' testimony, or may add credence to such witness' testimony." *United States v. Taylor*, 210 F.3d 311, 319 (5th Cir. 2000).  But she "is not forbidden to argue that the fair inference from the facts presented is that the witness has no reason to lie." *United States v. Munoz*, 150 F.3d 410, 414 (5th Cir. 1998).  Nor is she "prohibited from 'recit[ing] to the jury those inferences and conclusions [s]he wishes [the jury] to draw from the evidence so long as those inferences are grounded upon evidence.'" *Id.* at 414-15.  She "may even present what amounts to be a bolstering argument if it is specifically done in rebuttal to assertions made by defense counsel in order to remove any stigma cast upon [her] . . . or [her] . . . witnesses." *Id.* at 415 (citing *United States v. Dorr*, 636 F.2d 117, 120 (5th Cir. Unit A Feb. 1981)).

When considered in context of the entire closing argument, the remarks referenced by Patz scarcely rise to the level of improper argument, much less impermissible bolstering. The prosecutor in this case acknowledged at the outset of her closing remarks that Betsy

Helm, who played a significant role in the vicious offense, "is a horrible person." (Court Reporter's Record, vol. 10, at 47). The prosecutor told the jury in no uncertain terms not to "think for a second that I am condoning her, [or] supporting her. I'm not. She's horrible." (*Id.*).

More importantly, the prosecutor's remarks followed an attack on Helm by Patz's attorney, who argued in his summation that Helm was "an admitted prevaricator" and a "liar," who had cut a deal with the State for a lighter sentence. (Court Reporter's Record, vol. 10, at 32, 45). Where defense counsel insinuates that the government's witnesses perjured themselves because they entered into plea-bargains and were hoping to receive lighter sentences, a prosecutor may rebut those accusations, even if those statements otherwise would amount to a bolstering argument. *See Taylor*, 210 F.3d at 319 (citing *United States v. Washington*, 44 F.3d 1271, 1278 (5th Cir. 1995), *cert. denied*, 514 U.S. 1132 (1996); *United States v. Dorr*, 636 F.2d 117 (5th Cir. Unit A 1981)). Because it appears that the prosecutor's remarks were permissible, Patz fails to show that the challenged remarks amounted to misconduct.

### b.      Misstatement of the Evidence

Patz also takes issue with a misstatement allegedly made by the prosecutor during closing argument regarding gloves that were found at the crime scene. A medical examiner testified that latex gloves were found next to Roberts' decomposing body. (Court Reporter's Record, vol. 3, at 84). Of the three latex gloves recovered from the scene, one of them was found to have Patz's fingerprint on the inside. (Court Reporter's Record, vol. 5, at 30, 39).

Helm had testified that she and Patz both put on latex gloves while attempting to clean up the murder scene and that Patz had changed his gloves at least "once." (Court Reporter's Record, vol. 7, at 88, 91). Patz objects to a statement by the prosecutor, which implied that he had changed gloves more than once at the scene:

> What about the other gloves.  You can ask her what about the other gloves.  Well, [Patz] changed his gloves several times.  Is that an adding of fact, that was not there before.  No, it's just asking for an explanation of something you're trying to figure out and go, why are there more than one pair of gloves?  Well, because he changed them several times.

(Court Reporter's Record, vol. 10, at 52-53).  Because there was no evidence that Patz changed gloves more than once at the crime scene, Patz complains that the prosecutor's "flagrant error" requires a reversal.

The standard for granting habeas relief because of prosecutorial misconduct is "the narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Remarks made by a prosecutor are a sufficient ground for federal habeas corpus relief only if they are so prejudicial that they render the trial fundamentally unfair.  *See Harris v. Cockrell*, 313 F.3d 238, 245 (5th Cir. 2002) (citing *Ortega v. McCotter*, 808 F.2d 406, 410 (5th Cir. 1987) (quoting *Whittington v. Estelle*, 704 F.2d 1418, 1421 (5th Cir. 1983)); *Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (5th Cir. 1985); *see also Jackson v. Johnson*, 194 F.3d 641, 653 (5th Cir. 1999) ("[T]he appropriate inquiry is . . . whether the prosecution's comments so infected the trial with unfairness that there is a reasonable probability that the result would have been different if the proceeding had been conducted properly.")).  Such unfairness exists "only if the prosecutor's remarks

22

evince 'either persistent and pronounced misconduct or . . . the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred.'" *Harris*, 313 F.3d at 245 (citing *Kirkpatrick*, 777 F.2d at 281)(quoting *Whittington*, 704 F.2d at 1421); *see also Menzies v. Procunier*, 743 F.2d 281, 288-89 (5th Cir. 1984) ("[A] prosecutor's improper argument will, in itself, exceed constitutional limitations in only the most 'egregious cases.'") (quoting *Houston v. Estelle*, 569 F.2d 372, 382 (5th Cir. 1978)).

Patz does not dispute that his fingerprint was found in at least one of the gloves recovered near Roberts' body; nor does he explain how he was prejudiced by the comment about whether he changed gloves more than once at the crime scene. The isolated statement referenced by Patz was not so persistent and pronounced as to render the entire trial fundamentally unfair. *See Harris*, 313 F.3d at 245. Thus, Patz fails to demonstrate that the prosecutor's comment about the gloves was so egregious as to mandate relief.

### c.      Defendant's Failure to Testify

Patz contends further that the prosecutor engaged in misconduct during summation by commenting on his failure to testify. In particular, Patz objects to the following comments:

> . . . nothing in [Helm's] statement was challenged to show that what she said in the statement was not true.
>
> * * * *
>
> So let's take a look at what she testified to that was not challenged by the defense attorney.

(Court Reporter's Record, vol. 10, at 53). Pointing to these comments, Patz argues that the

prosecutor's criticism is tantamount to a violation of his Fifth Amendment right to remain silent.

The Fifth Amendment prohibits a prosecutor from commenting on a defendant's failure to testify.  *See Griffin v. California*, 380 U.S. 609, 615 (1965).  Comments may violate the Fifth Amendment if "the prosecutor's manifest intent in making the remark must have been to comment on the defendant's silence, or the character of the remark must have been such that the jury would naturally and necessarily construe it as a comment on the defendant's silence."  *Cotton v. Dretke*, 343 F.3d 746, 751 (5th Cir. 2003) (citations omitted), *cert. denied*, 540 U.S. 1186 (2004).

A review of the disputed statements shows that the prosecutor's intent was to comment on defense counsel's failure to challenge or attack Helm as a witness on a particular issue with the use of prior statement given by Helm to the police.  This does not constitute a comment on the defendant's silence.  Moreover, the character of the remark is not such that the jury would naturally and necessarily construe it as one.  *See, e.g. Beathard v. Johnson*, 177 F.3d 340, 350 (5th Cir.) (observing that, where comments made by the prosecutor do not show an intent to comment on the defendant's "failure to testify," there is no *Griffin* error), *cert. denied*, 528 U.S. 954 (1999).  Patz has failed to show that his trial was tainted by prosecutorial misconduct.  Accordingly, he is not entitled to habeas corpus relief on this issue.


   **D.    Ineffective Assistance of Counsel at Trial**

Patz complains that he was denied effective assistance of counsel at his trial because his attorney, Don R. Cantrell, committed the following errors: (1) he failed to object to the jury instruction on capital murder or request an instruction for the lesser-included offense of murder; (2) he failed to obtain a ruling on a motion to disclose and to exclude extraneous offenses by Patz; and (3) he failed to object to the admission of extraneous offenses by Patz. The state habeas corpus court reviewed an affidavit from Cantrell and rejected each of these claims as without merit. *See Ex parte Patz,* No. 60,982-01 at 71-72.

A claim of ineffective assistance of counsel presents a mixed question of law and fact. *Valdez v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001), *cert. denied*, 537 U.S. 883 (2002). Because Patz's claim was adjudicated on the merits during state habeas corpus review, the state court's decision will be overturned only if it is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The clearly established federal law governing ineffective-assistance claims is set out in *Strickland v. Washington*, 466 U.S. 668, (1984). To assert a successful claim under *Strickland*, a federal habeas corpus petitioner must establish (1) that his counsel's performance was constitutionally deficient, and (2) that actual prejudice occurred as a result of that deficient performance. *See Riley v. Cockrell*, 339 F.3d 308, 315 (5th Cir. 2003). The failure to prove either deficient performance or actual prejudice is fatal to an ineffective-assistance claim. *See Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998), *cert. denied*, 525 U.S. 1174 (1999) (citations omitted). Each alleged instance of ineffective assistance is examined below under this standard.

### 1.      Failure to Object to the Jury Instructions

Patz contends that Cantrell's performance was deficient because he failed to object to the jury instruction on capital murder or request an instruction for the lesser-included offense of murder.  In particular, Patz argues that Cantrell should have objected to the jury charge because there was "no evidence that the murder was committed in the course of committing robbery or attempting to commit robbery."  (Docket Entry No. 1, Petition, at 7). Patz maintains that Cantrell should have, at the very least, requested an instruction on the lesser-included offense of murder.

In his affidavit to the state habeas corpus court, Cantrell explained that he did not object to the jury instruction or request one on a lesser included offense because there was ample evidence introduced to show that the murder occurred during the course of a robbery. *Ex parte Patz*, No. 60,982-01 at 65. Cantrell stated further that, because there was sufficient proof to support the capital murder instruction, he believed that Patz was not entitled to an instruction on a lesser-included offense.  *See id*.   The state habeas corpus court found Cantrell's affidavit to be "credible." *Ex parte Patz*, No. 60,982-01 at 71.   This finding is presumed correct and Patz makes no effort to rebut this determination with clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1); *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002) (explaining that federal courts must defer to the trier of fact in resolving the credibility of witnesses).  Based on this affidavit, the state habeas corpus court concluded that Cantrell's decision not to object or request an instruction on the lesser-included offense of murder was "based on reasonable trial strategy and was made upon

counsel's assessment of the evidence presented at trial." *Ex parte Patz*, No. 60,982-01 at 71.

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Lave v. Dretke*, 416 F.3d 372, 380 (5th Cir. 2005) (citing *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)).   As noted above, this Court has already found that Patz's capital murder conviction was supported by legally sufficient evidence.   Patz has not shown that he had a valid objection to the jury charge or that he was entitled to an additional instruction on the lesser-included offense of murder. Patz has failed to demonstrate that his counsel's decision was not "conscious and informed" or that "it [was] so ill chosen that it permeate[d] the entire trial with obvious unfairness." *Lave*, 416 F.3d at 380.   Thus, Patz has not demonstrated that the state court's decision to reject his ineffective-assistance claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.   Patz is not entitled to federal habeas corpus relief on this issue.

### 2.    Failure to Exclude or Object to Extraneous Offenses

In two related grounds, Patz contends that Cantrell's performance was deficient because: (1) he failed to obtain a ruling on a motion to disclose and to exclude extraneous offenses committed by Patz; and (2) he further failed to object to the admission of certain extraneous offenses.   The state habeas corpus court rejected Patz's claims, finding that Cantrell's representation did not fall below an "objective standard of reasonableness[.]" *Ex parte Patz*, No. 60,982-01 at 71.   Alternatively, the state habeas corpus court found no actual

prejudice associated with Cantrell's chosen trial strategy.  *See id.* at 71-72.

The extraneous offenses that Patz finds objectionable mainly concern testimony about his drug use and associated behavior.  Helm testified that Patz was using drugs at the time of his arrest and that she was also using "[w]eed, cocaine, [and] crack" during this time period.  (Court Reporter's Record, vol. 7, at 105-106, 107).  A defense witness named Eugene Gutierrez, who was having an affair with Helm while she was with Patz, testified that Helm was addicted to "[c]oke and crack" and that Patz had used crack cocaine. (Court Reporter's Record, vol. 9, at 24, 27-29).  Gutierrez testified further that Patz and Helm fought frequently and that Patz became "aggravated" when he was using drugs.  (Court Reporter's Record, vol. 9, at 30, 32-33).

The transcript shows that Cantrell filed a motion prior to trial which asked the State to disclose any extraneous offenses it intended to use against Patz and to exclude reference to those offenses at trial. (Clerk's Record at 64-65).  The trial court did not grant the motion, but instead entered a blanket discovery order that directed the State to disclose, among other things, notice of all extraneous offenses that might be admissible against Patz. (Clerk's Record at 93-95).  Cantrell did not file a separate motion in limine regarding testimony about Patz's drug use or his aggressive behavior.

In Texas, "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  TEX. R. EVID. 404(b). It may be admissible for other purposes, however, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident,

28

provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than arising in the same transaction." *Id*. There were various bases to find that Patz's drug use was relevant in this case. First, evidence of Patz's drug use was admissible to show that Patz had a motive to commit robbery to support his habit.

The respondent maintains further that any failure by Cantrell to exclude or object to the extraneous offenses at issue was the result of reasonable trial strategy. Cantrell announced his strategy during his opening statement in which he explained that he intended to discredit Helm's testimony by pointing to her drug and alcohol abuse, as well as her troubled relationship with Patz. On cross-examination, Cantrell questioned Helm at length about the extent of her drug use and alcohol consumption. (Court Reporter's Record, vol. 7, at 118-24). In an effort to show that there were others with a motive to kill Roberts, Cantrell got Helm to admit that Roberts had evicted another "crack abuser" (Charlie Lopez) who had been living at the residence occupied by Helm and Patz prior to the murder. (*See id*. at 144-45). Helm also admitted having an affair with Eugene Gutierrez while she was in a relationship with Patz. (*See id*. at 145). Cantrell called Gutierrez as a defense witness and Gutierrez testified that Helm was "addicted" to crack cocaine at the time that Roberts' murder occurred. (Court Reporter's Record, vol. 9, at 24).

Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption" that "trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy." *West v. Johnson*, 92 F.3d

1385, 1400 (5th Cir. 1996), *cert. denied*, 520 U.S. 1242 (1997) (citing *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1993), *cert. denied*, 509 U.S. 921 (1993)).  As noted above, "conscious and informed" trial strategy will not rise to the level of deficient performance unless "it [was] so ill chosen that it permeate[d] the entire trial with obvious unfairness." *Lave*, 416 F.3d at 380.

The record in this case supports a finding that Cantrell allowed evidence of drug and alcohol use to smear Helm's character and to implicate others in Roberts' death.  Cantrell argued, in particular, that Helm was a liar who was "rarely if ever sober" during the time that the offense occurred.   (Court Reporter's Record, vol. 3, at 9-10).  Further, by allowing evidence that Helm and Patz had frequent, violent arguments, and that Helm was having an affair during their relationship, Cantrell implied that Helm had a motive to falsely implicate Patz.  In that respect, Cantrell argued that Helm's volatile relationship with her ex-boyfriend (Patz) gave Helm a reason to pin the crime on him.  (*See id.* at 11).  This strategy was effective, as even the State was forced to concede that Helm (who was the State's main witness) was a "horrible person" and that there were "a lot of reasons" to question Helm's testimony.  (Court Reporter's Record, vol. 10, at 47).

Patz complains, however, that Cantrell's strategy opened the door to the prosecutor's remark during closing arguments that Patz and Helm were "two peas in a pod."  (Court Reporter's Record, vol. 10, at 48-49).  This allowed the implication that Patz used drugs with Helm.  Nevertheless, Patz does not propose a different strategy that his counsel could have pursued, or suggest how Cantrell could have impugned Helm's testimony in any other way.

Given the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, the decision to allow the evidence was not objectively unreasonable. Accordingly, Patz has not shown that Cantrell's performance was deficient.

Alternatively, given the strength of the evidence against him, Patz does not demonstrate that he suffered actual prejudice as a result of his counsel's chosen trial strategy. Helm's testimony against Patz was very damaging. She testified that Patz brutally murdered the victim in this case and then stole his property. The evidence showed that the victim was advanced in years (seventy years of age) and had not only given Patz a job but had also given him a place to stay. Patz, who does not dispute that he murdered the victim or that he took the victim's property, was linked to the offense by other evidence, including his fingerprints and DNA found at the scene in a box filled with bloody towels and the murder weapon. The Fifth Circuit has held repeatedly that, where the facts at trial point overwhelmingly to the defendant's guilt, even the most competent attorney would be unlikely to have obtained an acquittal. *See Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998), *cert. denied*, 526 U.S. 1148 (1999); *Williams v. Scott*, 35 F.3d 159, 164 (5th Cir. 1994), *cert. denied*, 513 U.S. 1137 (1995); *Wilkerson v. Whitley*, 16 F.3d 64, 68 (5th Cir.), *modified on other grounds*, 28 F.3d 498 (5th Cir. 1994), *cert. denied*, 513 U.S. 1199 (1995). Even if Cantrell had successfully excluded any evidence of drug use by his client or by Helm, Patz fails to show that the result in this case would have been any different.

Absent a showing that his trial counsel's performance was deficient and that he was

actually prejudiced as a result, Patz has not established a valid claim for ineffective-assistance of counsel. Patz has not demonstrated that the state court's decision to reject his ineffective-assistance claims was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. Accordingly, he is not entitled to federal habeas corpus relief on this issue.

### E.    Ineffective Assistance of Counsel on Appeal

Patz contends that he was also denied effective assistance of counsel on appeal because his appellate attorney, Randy McDonald, failed to raise an issue about whether the prosecutor committed misconduct during closing arguments. The state habeas corpus court rejected this claim as without merit. *See Ex parte Patz,* No. 60,982-01 at 71-72.

To establish that appellate counsel's performance was deficient in the context of an appeal, the defendant must show that his attorney was objectively unreasonable in failing to find arguable issues to appeal — that is, that counsel unreasonably failed to discover non-frivolous issues and raise them. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Counsel need not raise every nonfrivolous ground of appeal, but should instead present "[s]olid, meritorious arguments based on directly controlling precedent." *Schaetzle v. Cockrell*, 343 F.3d 440, 445 (5th Cir. 2003) (citing *United States v. Williamson*, 183 F.3d 458, 463 (5th Cir. 1999)). If he succeeds in showing a deficiency, a petitioner then must demonstrate that he was actually prejudiced by his counsel's errors. *See Robbins*, 528 U.S. at 285-86 (noting that, where, as here, the defendant has received appellate counsel, there is no reason to presume the defendant has been prejudiced); *see also Roe v. Flores-Ortega*, 528 U.S. 470,

484 (2000).   To establish actual prejudice, the defendant must show a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on appeal." *See Robbins*, 528 U.S. at 285.

The record does not indicate that Patz's trial attorney preserved error for appeal in connection with the alleged instances of prosecutorial misconduct referenced above by lodging a contemporaneous objection during closing arguments.   More importantly, for reasons outlined earlier, Patz has failed to establish that he had a valid claim of prosecutorial misconduct.   Patz suffered no prejudice from the absence of this argument.   The right to counsel on appeal "does not include the right to bring a frivolous appeal and, concomitantly, does not include the right to counsel for bringing a frivolous appeal." *Robbins*, 528 U.S. at 278.   Absent a showing that his counsel failed to raise a valid claim, Patz does not demonstrate that he received ineffective assistance of counsel in connection with his appeal. He has therefore failed to demonstrate that the state habeas corpus court's decision to reject his ineffective-assistance claim was contrary to, or involved an unreasonable application of, clearly established federal law.   Therefore, Patz is not entitled to habeas corpus relief on this claim.   Because Patz has failed to demonstrate a valid claim, the respondent's motion for summary judgment is granted.

## IV.   CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the AEDPA, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.) (noting that

actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability),

*cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997).  "This is a jurisdictional

prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues

a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'"

*Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial

showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a

petitioner to demonstrate "that reasonable jurists would find the district court's assessment

of the constitutional claims debatable or wrong."  *Tennard v. Dretke*, 542 U.S. 274, 124 S.

Ct. 2562, 2569 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the

controlling standard, this requires a petitioner to show "that reasonable jurists could debate

whether (or, for that matter, agree that) the petition should have been resolved in a different

manner or that the issues presented were 'adequate to deserve encouragement to proceed

further.'"  *Miller-El*, 537 U.S. at 336.  Where denial of relief is based on procedural grounds,

the petitioner must show not only that "jurists of reason would find it debatable whether the

petition states a valid claim of the denial of a constitutional right," but also that they "would

find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529

U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring

further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

The Court concludes that jurists of reason would not debate whether any procedural ruling

in this case was correct or whether the petitioner has stated a valid claim concerning the denial of a constitutional right. Accordingly, a certificate of appealability will not issue in this case.

## V.    CONCLUSION AND ORDER

The petitioner has failed to establish that he is entitled to a federal writ of habeas corpus under 28 U.S.C. § 2254. Accordingly, for all of the foregoing reasons, the Court **ORDERS** as follows:

1.    The respondent's motion for summary judgment (Docket Entry No. 12) is **GRANTED**.

2.    The federal habeas corpus petition is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

3.    A certificate of appealability is **DENIED**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas on **October 14, 2005.**

Nancy F. Atlas
United States District Judge